**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CLAYTON PHILLIPS,<br><br>           Petitioner,<br><br>    v.<br><br>J. SOLIS, Warden,<br><br>           Respondent._____/ | No. C 04-0391 PJH (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the writ should not be granted.  Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court.  Petitioner has responded with a traverse.  The matter is submitted.

**BACKGROUND**

Petitioner was convicted by a jury in Monterey County of possession for sale of cocaine, *see* Cal. Health & Safety Code § 11351; possession for sale of cocaine base, *see* Cal. Health & Safety Code § 11351.5; possession of a firearm by a felon, *see* Cal. Penal Code § 12021(a)(1); transportation of cocaine, *see* Cal. Health & Safety Code § 11352(a); possession of cocaine, *see* Cal. Health & Safety Code § 11350(a); possession of cocaine while armed with a firearm, *see* Cal. Health & Safety Code § 11370.1(a); and carrying a concealed firearm in a vehicle, *see* Cal. Penal Code § 12025(a)(1).  The trial court sentenced petitioner to prison for eighteen years and four months.

The California Court of Appeal affirmed the conviction, striking only a sentence enhancement derived from section 11370.4 of the California Health & Safety Code.  The

California Supreme Court initially granted review, but the review was later dismissed as improvidently granted. *People v. Phillips*, 55 P.3d 35 (2002).

Petitioner also filed habeas petitions in Monterey County Superior Court, the Court of Appeal, and the California Supreme Court. The Superior Court denied his petition in a reasoned opinion; the Court of Appeal and Supreme Court denied the petitions without opinion.

As grounds for habeas relief, petitioner asserts that: (1) his trial counsel provided constitutionally ineffective assistance for failing to challenge the search of the car or attempt to suppress the fruits of the search, and (2) the trial court improperly excluded the testimony of a witness who claimed a Fifth Amendment privilege against self-incrimination, in violation of petitioner's own right to compel the attendance of witnesses pursuant to the Sixth Amendment.

The Court of Appeal related the salient details of the incident:

> On August 27, 1998, at about 9:00 p.m., Seaside Police Officers Christopher Veloz and Steven Wright were dispatched to the Mission Memorial Cemetery pursuant to a report from a concerned citizen about three trespassers in the cemetery.
> When the officers arrived at the cemetery, it was closed. There were no lights on, and there was a chain across the entrance preventing people from driving into the cemetery. The officers illuminated the cemetery area with their spotlights. They did not see anyone, but they did notice a blue Cadillac Seville parked outside the cemetery. The vehicle was similar to the one described in the broadcast. No one was inside the Cadillac.
> The officers left. However, about 20 minutes later, the concerned citizen called again. She had seen the officers near the Cadillac, and stated that it was the trespassers' car. The concerned citizen offered to speak directly to the officers and also offered to give her name and address.
> The officers drove back towards the cemetery, in separate vehicles. Officer Wright observed the Cadillac, which contained four people, driving "very rapidly" away from the cemetery. He turned his patrol car around in order to follow the Cadillac, and sent out a message over the police radio. Officer Veloz observed the Cadillac and initiated a traffic stop by turning on his patrol car's emergency lights. However, the Cadillac did not stop immediately; it continued on for about 200 yards. Officer Veloz observed defendant, the driver, "leaning over towards the center portion of the vehicle."
> After stopping, defendant exited the Cadillac, while the three passengers remained inside. It appeared defendant was thinking about running away. Officer Veloz ordered defendant to get back into the Cadillac. Defendant complied. The officers had the four people get out and identify themselves. The three passengers were Ronald Johnson, Kenneth Bryant, and Timothy Dunn. Both Johnson and Bryant were on parole at the time.

> The officers searched the vehicle. In between the two front seats, they discovered a handgun, which had been stolen during a burglary sometime earlier in the year. . . . Defendant was arrested and transported to the police department, where he was searched. Police found rock cocaine in his shoe (5.18 grams), in a jacket pocket (2.27 grams), and between his buttocks (5.33 grams). They also found some marijuana in his pocket. Defendant had a pager and $241 cash on his person. Ronald Johnson and Kenneth Bryant were also arrested on parole violations. Johnson, too, had rock cocaine between his buttocks.

Ex. 13 (opinion of the California Court of Appeal) at 2.[1]

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-9 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A state court decision is "contrary to" Supreme Court authority (that is, falls under the first clause of § 2254(d)(1)) only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but

---

[1] The Court of Appeal's version of the facts differs slightly from the trial record. At trial, Officer Veloz testified that instead of complying with his order to get back into the car, petitioner had to be pat-searched, handcuffed, and placed in the back of a patrol car for the officers' safety. Ex. 5 (Reporter's Transcript of trial), Vol. 1, 64-8 (May 24, 1999).

3

"unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 339. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 339; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

**DISCUSSION**

*A. State Court Opinions*

The Monterey County Superior Court was the only court to offer a reasoned opinion on petitioner's first claim. That court held that the ineffective assistance of counsel claim was without merit because the search of the car was entirely legitimate; therefore, petitioner's trial counsel did not err in not challenging the search of the car. The Court of Appeal was the last court to offer a reasoned opinion on petitioner's second issue; the court ruled that petitioner's right to compulsory process was not violated when the trial judge decided to strike Ronald Johnson's testimony, because Johnson could not be subjected to proper cross-examination. Because this court "looks through" subsequent unexplained rejections of petitioner's claims to the last reasoned opinion, it is these rulings -- that of the

Superior Court as the first claim, and that of the Court of Appeal as to the second -- which are at issue in this case. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991) (procedural default context); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (state court decision to which 2254(d) applies is the "last reasoned decision" of the state court).

### B. Ineffective Assistance of Counsel

Before trial, petitioner filed a motion to suppress the evidence seized from his person and the car, arguing that the initial detention (Officer Veloz pulling the car over) was illegal, so the fruits of the search should be suppressed. The trial court denied this motion, finding that, under the totality of the circumstances, it was reasonable for the officers to believe the occupants of the vehicle had violated section 647(h) of the California Penal Code (loitering, prowling, or wandering upon the private property of another). *People v. Phillips*, 89 Cal. App. 4th at 71. Petitioner now asserts that counsel should also have contended that regardless of the legality of the stop, the subsequent search of the car and seizure of evidence from it violated the Fourth Amendment.[2]

In rejecting this claim in petitioner's state habeas petition, the Monterey County Superior Court said that "petitioner has failed to state a prima facie case for relief" and that he "has failed to even allege, much less demonstrate, that he has a reasonable expectation of privacy." Ex. 24 at 1. The court denied the petition for a writ of habeas corpus. *Id.* Subsequent habeas petitions raising the same claim were denied by the California Court of Appeal and the California Supreme Court without opinion. Ex. 25 & 27.

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner must first establish that counsel's performance was deficient: i.e. that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was

---

[2] Some of petitioner's charges were based on cocaine and weapons found in his home, but he does not challenge the effectiveness of counsel with respect to this other search.

5

prejudiced by counsel's deficient performance: i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court tailored the *Strickland* test to circumstances where a Fourth Amendment claim is central to the claim of ineffective assistance of counsel.  *Id.* at 375. The Ninth Circuit succinctly summarized the *Kimmelman* test in *Ortiz-Sandoval v. Clarke,* 323 F.3d 1165, 1170 (2003):  When the ineffective assistance of counsel claim is "rooted in defense counsel's failure to litigate a Fourth Amendment issue...petitioner must show that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence." *Id.* at 1170.  So the first question is whether a motion to suppress on the grounds petitioner says should have been raised would have succeeded.

In order to claim the protection of the Fourth Amendment, petitioner must "demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  However, automobiles receive markedly less Fourth Amendment protection than other areas. *See Carroll v. United States*, 267 U.S. 132, 153, 158-59 (1925) (establishing the "automobile exception," which allows warrantless search of automobiles if there is probable cause).

The Supreme Court has stated that "the reasons that might support a requirement of some level of suspicion in the case of highly intrusive searches of the person – dignity and privacy interests of the person being searched – simply do not carry over to vehicles." *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004).  The justification for this reduced expectation of privacy, the Court has said, is that a motor vehicle has as its function "transportation[,] and it seldom serves as one's residence or as the repository of personal effects.  A car has little capacity for escaping public scrutiny.  It travels public

thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974).  And finally, directly addressing the issue of searches of lawfully stopped vehicles, the Court held that "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 708, 825 (1982).  Therefore, if the police had probable cause to search the car, petitioner's claim must fail.

Probable cause is a flexible, common-sense standard.  The Ninth Circuit succinctly phrased the common-law test for probable cause: "the facts available to the officer would 'warrant a man of reasonable caution in the belief' [citation omitted] that certain items may be contraband or stolen property or useful as evidence of a crime." *United States v. Dunn*, 946 F.2d 615, 619 (9th Cir. 1991).  Probable cause is analyzed based on the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  The Supreme Court has also stated that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).  Specifically, the Court held that:

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

The record includes sufficient facts to demonstrate the police had probable cause to search the automobile, based on the totality of the circumstances.  First, petitioner (who was driving) did not immediately pull the car over; indeed, he continued for several hundred yards and turned a corner before stopping.  Ex. 5 (reporter's transcript of trial), Vol. 1 at 62 (May 24, 1999).  Second, Officer Veloz observed the driver "leaning over towards the center portion of the vehicle."  *Id.* at 61.  This curious behavior would likely make a

reasonable person believe that petitioner was attempting to hide contraband from the police before pulling to the side of the road. Third, petitioner insisted, even after being instructed otherwise, on stepping out of the car during the stop.  Common sense dictates that this type of threatening behavior will always make police officers even more cautious for their safety and suspicious of the surrounding circumstances.  Fourth, Officer Veloz stated that petitioner appeared extremely nervous upon stepping out into the road.  *Id.* at 68.  Finally, the trial court found that the initial detention of the car was entirely reasonable.  Ex. 4 (reporter's transcript of suppression hearing) at 47 (Jan.14, 1999).  While each of these pieces alone would not support a finding of probable cause, together they constitute sufficient cause for the search of the car.  As the Ninth Circuit phrased it, "all that is required to stop and search an automobile on a road is probable cause to believe it contains contraband."  *United States v. Trejo-Zambrano*, 582 F.2d 460, 463 (9th Cir. 1978).  The officers here conducted a reasonable and legitimate search based on probable cause.

      Petitioner places great emphasis on Officer Veloz seeking "consent" to search from the parole officer of two of the car's passengers.  Officer Veloz did contact the parole officer to confirm their status; however, it seems clear that Officer Veloz was suspicious of petitioner and his passengers from the beginning.  Indeed, at the point when petitioner was cuffed and placed in the patrol car, Officer Veloz had a "strong feeling that something had been concealed in the car. [He] felt it may have been a weapon," and intended at that point to remove everyone from the car and search it for weapons.  Ex. 5, Vol. 1 at 69.  This occurred before the passengers' parole status was discovered.  But once the passengers' parole status was discovered, that status became one more part of the "totality of the circumstances."

      That there were two parolees in the car may not be examined separately from the question of overall probable cause.  In *United States v. Knights*, the Supreme Court dealt with a situation where police were suspicious that defendant, who was on probation, was responsible for a series of arson attacks.  534 U.S. 112, 115 (2001).  A detective saw some

8

incriminating items in a truck parked outside defendant's home, and entered and searched the home without a warrant, pursuant to defendant's probationary status. *Id.* The Court specifically refused to decide whether probation was tantamount to "consent" to search, but instead concluded that "the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' [citation omitted] with the probation search condition being a salient circumstance." *Id.* at 118. *Knights* is a good analogy to petitioner's case, where the parole status of the passengers was one "salient" criterion in the overall determination of probable cause.

The Ninth Circuit has held that "trial counsel cannot have been ineffective for failing to raise a meritless objection." *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Since petitioner has failed to carry his burden with respect to the first prong of the *Kimmelman* test, this court need not reach the second. *See Hendricks v. Calderon*, 70 F.3d 1032, 1039 (9th Cir. 1995), *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). The state court decisions rejecting this claim were not contrary to, or an unreasonable application of, clearly established federal law. Therefore, petitioner is not entitled to relief on his first claim.

B.    *Compulsory Process Claim*

Petitioner asserts that his Sixth Amendment right to compulsory process was denied when the trial court allowed a defense witness, Ronald Johnson, to assert his Fifth Amendment right against self-incrimination, thus removing himself as a witness and leading the judge to strike Johnson's testimony. The Sixth Amendment guarantees, among other rights, that a criminal defendant will have "compulsory process for obtaining witnesses in his favor" and the Fifth Amendment guarantees, among other rights, that a person shall not be "compelled in any criminal case to be a witness against himself."

At trial, Ronald Johnson, who had been a passenger in the front seat of the car when petitioner was stopped, was called by petitioner as a witness. Ex. 13 (opinion of the California Court of Appeal) at 5. Johnson, who was on parole at the time of the arrest, had

9

1 entered into a plea bargain and been sentenced to twenty-eight months in prison for drug
2 charges. *Id.* The weapons charge had been dismissed. *Id.* Johnson testified regarding
3 the drug possession, but when petitioner's attorney questioned him about the gun found in
4 the car, Johnson invoked his privilege against self-incrimination. *Id.* Johnson's attorney
5 informed the court at a bench conference that he had researched the issue and believed
6 that his client could still be prosecuted for possession of the gun, even though he had pled
7 guilty to the drug charges and been sentenced. *Id.* Johnson took his lawyer's advice and
8 refused to testify further. *Id.* Seeing no way to compel the testimony, the trial judge struck
9 the direct testimony from the record, advising the jury to disregard what it had heard. *Id.*

10     The Ninth Circuit has squarely held that "the Sixth Amendment right of an accused
11 to compulsory process to secure the attendance of a witness does not include the right to
12 compel the witness to waive his Fifth Amendment privilege." *United States v. Trejo-*
13 *Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978). Though the Supreme Court has not ruled
14 directly on this issue, in *Chambers v. Mississippi*, the Court stated that a defendant's right
15 to present relevant testimony is not without limitation, and "may, in appropriate cases, bow
16 to accommodate other legitimate interests in the criminal trial process." 410 U.S. 284, 295
17 (1973). In *United States v. Gay*, the Ninth Circuit again discussed this issue:

> The uniform response to this constitutional tension [between the two Amendments] has been that, irrespective of the Sixth Amendment, a defendant has no absolute right to elicit testimony from any witness...whom he may desire. Indeed, the witness may be unavailable to him for many reasons, *e.g.*, death, incapacity, presence outside the range of legal process, and commonly, the refusal of the witness to testify pursuant to a claim of privilege, not the least important of which arises from the Fifth Amendment.

22 567 F.2d 916, 919 (9th Cir. 1978).

23     The California Court of Appeal, in petitioner's direct appeal upon conviction, upheld
24 the trial court's ruling that since "Johnson refused to testify on the advice of his attorney,
25 [he would] therefore would not be 'adequately subject to cross-examination by the other
26 side of the case.'" Ex. 13 at 6. The court continued, "where a witness refuses to submit to
27 proper cross-examination regarding material issues, the striking out or partial striking out of
28

10

direct testimony is common." *Id.* The court concluded that "a criminal defendant's...right to have compulsory process for obtaining witnesses in his favor cannot be deemed to include the right to call a witness who cannot be subjected to proper cross-examination." *Id.* It is this holding, and the ensuing decision to strike Johnson's testimony, that must be examined in relation to 28 U.S.C. § 2254(d).

The Supreme Court has held that "cross-examination of a witness is a matter of right." *Alford v. United States*, 282 U.S. 687, 691 (1931). The reason for this important trial right, the Court continued, was that "prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test." *Id.* at 692. The Court's cases "make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton v. Evans*, 400 U.S. 74, 89 (1970) (citing *California v. Green*, 399 U.S. 149, 161 (1970)).

Johnson refused to testify as to the gun found in the car, and there was little that the trial judge could do to induce him to testify. Johnson was already serving a sentence in prison, so the threat of being held in contempt would not have swayed him. Johnson's lawyer had advised him not to testify; the court had no valid sanction against him. The trial judge decided that since the prosecutor would not be able to examine Johnson, his testimony should be stricken. This decision, and the Court of Appeal decision upholding it, are consonant with the great importance placed on the right to cross-examine witnesses.

In *Denham v. Deeds*, the Ninth Circuit held that "where a defense witness refuses to answer questions that go to the heart of the direct testimony on a central issue...the truth-seeking function of the court is impaired." 954 F.2d 1501, 1504 (9th Cir. 1992). The *Denham* court concluded that "where a defense witness's invocation of Fifth Amendment protection against self-incrimination amounts to a refusal to be cross-examined, the testimony cannot be considered reliable," and ruled that the witness's testimony was

properly excluded by the trial court. *Id.* In *United States v. Cardillo*, the Second Circuit held that "if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part."  316 F.2d 606, 611 (2d Cir. 1963).

The trial judge, "uniquely well-suited to make this determination," *United States v. Panza*, 612 F.2d 432, 439 (9th Cir. 1980), used his discretion to strike Johnson's testimony. The judge and the Court of Appeal acted within the parameters of established federal law; therefore, petitioner's compulsory process rights were not violated.  As a result, the Court of Appeal's denial of this claim was not contrary to or an unreasonable application of established federal law.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  July 27, 2006.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\PHILLIPS391.RUL